Court of Appeal. May it please the court, my name is Jordan Kushner and I represent the appellant Adetokunbo Adejumo. This is a post conviction proceeding and the issues here about effective assistance of counsel and new evidence represent issues about the complexity of representation in a federal case and what standards the court need to apply to ensure that a defendant gets effective representation. So the first issue that's before the court involves a question about whether Mr. Adejumo was given advice by his attorney in connection with his decision to testify at a pretrial detention hearing. Based on the facts in the record, Mr. Adejumo has said that his attorney suggested he testify at this pretrial detention hearing and never give him any advice as to the consequences. His trial counsel submitted an affidavit, I think kind of vaguely indicating providing some kind of advice, but there hasn't been a hearing and so the question here is whether Mr. Adejumo is entitled to a hearing based on his allegation that he didn't get any advice from his attorney. What is the scope of that argument though? I mean in the allegation specifically because I think that the district court judge might be right that what is it, why would an attorney have to counsel their client in light of the oath? Oh, you can't perjure yourself, right? That's common knowledge. So I want to know what the scope of the allegation here and whether or not the allegation goes beyond that. Sure. And I think it's a practical matter when you're talking about criminal defense and I don't see how it can be adequate for an attorney to just tell a client, yeah, you can't perjure yourself when you testify. You need to hear what the client is going to testify to and then provide advice to the client about how that testimony is likely to come off and what the consequences might be, particularly in federal proceedings where you can actually enhance your sentence substantially if the judge decides that you were lying. And there are allegations in the motion that go just, go beyond that. In other words, it's not, he didn't just want, he doesn't allege an effective assistance to counsel just because counsel didn't tell him that he couldn't perjure himself, but he wanted, he wanted more information about what the potential consequences could have been even if he testified truthfully, for example. I think that's exactly, that's exactly the point. So no one knows that this was the question here is Mr. Adejumo's detention was being assaulted, his girlfriend, there were exact, you know, there were damning police reports, you know, indicating what she had made allegations to, and then she was, apparently she came back to court and said it didn't happen at the hearing and Mr. Adejumo testified and said it didn't happen. And so what the, no one knows exactly what happened, who's in the court, because no one was there. But, you know, and a competent attorney needs to listen, okay, what are you going to testify to? You know, people don't believe that kind of stuff, you know, um, you know, once, once . . . But also the fact that I think the, the girlfriend actually, as you referred to, recanted correctly. So that's sort of an additional twist. So Mr. Adejumo's thinking, well, the only other witness that's going to testify is, says it didn't happen, right? So it's sort of a double layer here. You've got the district court or the magistrate court believing an out-of-court statement to a police officer more than the two live, uh, test, live witnesses testifying to the event itself. So it's a little complicated. I think it is a, no question, it's a complicated question. And if, if it had been discussed properly, um, there might, you might not have been able to fault the attorney's advice either way. But what, what, what the, what the defendant in this situation has to know is that first of all, the courts are very sympathetic towards domestic violence issues. They know that victims recant and that people deny it. And so there's a good chance that they're going to decide you're lying. And second, if they do, you're going to be in a heap of trouble when it comes to sentencing. You've already pled guilty. You're getting your, uh, you can get except obstruction of justice. You're going to lose acceptance of responsibility. So that's five points higher in your sentence. Do you want to take the chance in order to just be free for a few extra months when you're going to prison anyway? I think the district court sort of said it didn't, it didn't really matter, but where are we sort of procedurally, you said there was an affidavit from this attorney, so you're requesting a full blown hearing on it. Is that where, if in fact we would to agree with you, is that what you'd be requesting? I think that's what, I think that's what, I think we would need to have a hearing in order to determine what advice, if any, the attorney gave, whether the attorney gave Mr. Anujuma any advice, and if so, whether it was met the requisites of effective assistance of counsel. And so, it was a very consequential decision ultimately, because he ended up getting five points. It made a difference ultimately of five points on his sentencing guidelines. And so, the fact that he didn't discuss this issue with him, I think, is a standard that you cannot allow when it comes to federal criminal representation. Actually, just to add to that, factually, you mentioned the five points. Did he lose the acceptance of responsibility reduction because of the false testimony? So, was it actually a seven point swing altogether, or just the five points? It was five points, because there's two points added for obstruction of justice, and then the loss of the three points that he was supposed to get for acceptance of responsibility. I see. Was the sentence here a guideline sentence? We've obtained appeals on this, should be able to figure it out. Tell me the truth. I think the district court looked at the guidelines and I think imposed a sentence that was, I believe, slightly below the guidelines. You're right, thank you. So, but it went off the guidelines. So, the other issue here is about the loss amount, the contesting of the loss amount. Where there was discussions in the plea colloquially from the prosecutor, where the prosecutor was clear that he understood that the defendant, I forget if it was he or she back then, there have been different attorneys on the case. But the prosecutor was clear in the colloquially, your attorney's going to contest the loss amount. I'd like to focus in on exactly where you're alleging the ineffective assistance is on the loss issue. Am I reading it correctly to say that the allegation or the assertion is that counsel was ineffective at the moment, I think it was a he there, right? He conceded to the district court that he was bound by the plea agreement. When in fact, in your view, the plea agreement was ambiguous? Is that the point of ineffectiveness, or are we going- That's correct. Okay, so we're not going back to ineffective assistance of counsel at the plea negotiations, it's just that moment. Right, I mean, as long as it was understood in the record that Mr. Adejumo was going to be able to contest the loss amount, and his attorney objected to it, then there wouldn't be ineffective assistance at that point. But when he conceded to the judge that they agreed to the loss amounts, when the record indicates they had not. Well, doesn't that focus, though, hurt your case? I mean, your response to Judge Kelly, and I'll tell you why, and you can challenge me on this, but everybody was confused. You read that transcript, the prosecutor was confused about what had been stipulated to. The judge was confused about what had been stipulated to, and we're really talking about what an objectively reasonable attorney would do under these circumstances. So the fact that his defense counsel was confused doesn't seem all that unreasonable, given that everybody else, including the judge, was confused. I don't think someone looking at that plea colloquially should be confused, because the prosecutor explicitly said, we're saying that this is a loss amount, your attorney is going to argue about it. Yes, there's other things that create confusion. The judge went back and cited specific points in the record, that are in the plea agreement, but based on provisions, but didn't mention specifically loss amount, but seemed to be trying to cover that the plea agreement was what would stand. But the attorney understood what the conditions of the plea were, that was stated orally on the record. And then it's indicated by the fact that, supported by the fact that he objected to it. So you think we should ignore the fact that people had differing views at different points in time. I mean, almost everybody had a different view of this at different points in time. We should ignore that and say that, go back and look at that plea colloquially in the plea agreement and say, no reasonable attorney could possibly have been confused about this thing, nor the fact that people were confused. Well, I think that, first I think that on the issue of what the attorney needed to do, the attorney needed to advocate for his client's position. And when there's clearly support in the record for the position that they're allowed to contest the loss amount, and he had done so all the time. That's where the attorney had an obligation to advance the client's position. So obviously, every point can be argued back and forth. And so, the defense attorney can't just concede because there's arguments the other way. And the judge says, I'm going this way, he needs to make a record and say, no, we are objecting to loss amounts. We said that we could do it in the plea colloquy, I mean, to maintain our position that we're objecting to loss amounts. So it's not just about whether it's the ultimate multiple decision, but the attorney's obligation to advocate. Time is short, let me ask you, in our well-written opinion, it says, because he so agreed, comma, Adjunimo is precluded from disputing the loss amount on appeal. Why doesn't that handle a tremendous percent of your argument on the point about loss amount? That simple sentence, determined by this court law, the case law, something, you know, Eighth Circuit holding, something. Because there's a lot of case law that shows that the government, the plea has to be examined based on all the information. That the plea colloquy is part of the agreement, even if it's contradictory to the written plea agreement. And that the language of the agreement has to be construed against the government. So there's a lot of case law that supports it. And I think what's critical here, I think what overrides the district court's decision is the appellate decision that Judge Kelly wrote. I was quoting from Judge Kelly's opinion. Okay, all right. The quote I gave you, because he so agreed, say your client's last name for me. Adjunimo. Adjunimo, is precluded from disputing the loss amount on appeal. That's in our opinion. Right, that was on the appeal, and so that's where we get, since we were foreclosed from arguing on appeal, that's where the ineffective assistance of counsel comes in, because he shouldn't have agreed to it. So- Back to ineffective assistance in doing a plea agreement, right? Well, no, it's not doing the plea agreement, but it's arguing his client's position at set and maintaining his client's position. So let me read from another part of Judge- I'm also taking you into your rebuttal, but you use your time however you want to. Okay, well let me read another portion of Judge Kelly's decision, which I think makes it clear that he was allowed to dispute the loss amount. It says- And it's the court's opinion, too, we don't need to be- Yeah, and this is at page 538 of the original appeal in 2014. Although Adjunimo stipulated in his plea agreement that he and others obtained or attempted to obtain in excess of $1 million, he did not concede he was personally responsible for the entire amount, and he did not plead guilty to a conspiracy. At his plea hearing, the government told Adjunimo and the court that while it believed the amount of loss was more than $1 million but less than $2.5 million, Adjunimo would be allowed to dispute the loss amount at sentencing. When Adjunimo objected to the amount of loss recommended in the pre-sentence report, the government did not contest his ability to do so. And then, indeed, in its brief on the direct appeal, the government- The rest of the paragraph, it's sentencing. He agreed with the court he was bound because he so agreed he was precluded. Right. You read the whole paragraph. So that's, okay, I understand. So that's why he was precluded from doing an appeal, but he's not precluded from raising ineffective assistance of counsel. And also, I think it's also very significant that the government, it turns out, didn't have evidence to support its loss amount, that the restitution was all thrown out. And I think that needs to be worked into all of this as well. In that there was no difference at the restitution hearing between intended loss and actual loss. There was no, so that's the government's main argument. It's different because it could have been intended loss, but the rest, there was no allegation that it was based on intended loss. Thank you for your argument. Thank you. Ms. Velasquez-Aguino? Aguilu. Aguilu, sorry, I got close. May it please the court, counsel. My name is Lola Velasquez-Aguilu and I represent the United States. I'd like to start out with the first issue before the court relating to the testimony of Mr. Adejumo at the hearing. And Judge Strauss, you asked an interesting question about what are the advisements that this defendant is particularly complaining about. If you go back to his initial 2255 motion with the district court, the specific allegation is that he was not advised of the potential enhancement for obstruction. And so the issue before this court is really whether counsel rendered constitutionally ineffective assistance by failing to warn Adejumo that his testimony could result in an obstruction enhancement. Well, but you're right. You're absolutely right with the way you characterize it, but it goes a little broader than that. There's a risk any time you're dealing with this, as Mr. Kushner mentions, that the district judge, even if you're testifying truthfully, and I'm not making a judgment here about whether it was truthful or false or whatever, the district court already decided that. But you could testify completely truthfully and still get an obstruction of justice enhancement because some other witness testifies in conflict. And so my point is, is maybe counsel should have sat down with him and said, look, you could testify completely truthfully. But you've got to understand somebody else may testify differently than you, and the judge could use that to enhance your sentence. And I think that might be a problem, not having advised him of that. So there's a couple things I'd like to point out in response to that, Your Honor. First, this defendant committed perjury, and perjury is providing a willfully false statement under oath. And so we aren't dealing with a situation where the defendant had a belief that they were testifying truthfully and that testimony simply wasn't credited. So just a factual distinction to point out. But if the focus is that the defendant didn't contemplate a subjective review of the testimony, I didn't realize that the district court might hear my testimony and impose a negative consequence as a result. That's true in all circumstances like that. If we even go back to Mondo Hano, there the witness testifying before the grand jury was subject to a subjective review of that testimony. In that instance, it's the government deciding not to credit the testimony, determining that the testimony was knowingly false, and deciding to bring a perjury prosecution. But there, I think it is a different situation than what Judge Strauss is presenting. That you're not talking about the relationship between the attorney and his or her client in giving advice about how to proceed in a criminal case. And so I guess I think that's sort of a 90 degree turn from what that case addresses. Although, Your Honor, what the case addresses that is significant here is the sanctity of the oath and the significance that the oath has to communicating to the witness that false testimony will have negative consequences. Let me push you a little bit further that the oath does give you the warning. You gotta tell the truth, right? Then you wouldn't need a lawyer. I mean, you've got a lawyer for a reason to help guide you through this system. And that I don't know, and tell me if you think I'm wrong, that a person charged in federal criminal court might not know the nuances of the federal guidelines in the types of ways that this particular testimony could harm him. So, I mean, hopefully I'm answering your question. I think your question is, should a defense attorney advise a defendant of the strategic implications or Am I correct? Sure, yeah, answer that one. Well, I would submit to the court that there is no legal support for that proposition. And so because we are here in the context of a 2255 claim, the question that we have to be analyzing is whether it was objectively unreasonable for counsel to fail to advise the defendant of these consequences. And so it cannot be that it was objectively unreasonable for When there is no law indicating that there is such a requirement. When you say there's no law, I like to kind of tease that out a little bit. What do you mean by that? Are you talking about the, I'm not going to pronounce it well, the Manduano case? Manduano is significant in terms of the import of the oath, but there are no cases that have stated that a defense attorney has an obligation to inform a defendant of the negative consequences that can flow from untrue testimony. In all of the cases that have specifically decided this issue and recognizing that we're dealing with district court cases here. But nonetheless, all of these cases have concluded that there is no affirmative obligation for a defense attorney to make this warning because once that witness takes the oath, the witness is on notice. When you promise to tell the truth and you fail to do so, there will be negative consequences. But the key to your argument, really quickly, just to tease that out. The key to your argument is that it was perjure testimony or false testimony. If we were presented with a situation where it was truthful testimony, or you asserted that it was truthful testimony, your answer might be different, correct? It would be an entirely different case. I suppose we would be having to look at really the substance of the obstruction enhancement in and of itself. There is another definition for obstruction that would potentially warrant an enhancement in that circumstance. But that's not what we have here. So you are not saying that, let me state it more positively. A defense counsel should tell, this is, I forget the other, I'm going to go with this. A defense counsel should tell the client about the risk of testifying in general, right? Am I saying that a defense counsel should- Yeah, no, you're saying you're going to block that out of this case. You're going to leave aside and say, well, there are many cases where a defense counsel should tell about the general risk of testifying. I am not going to, yes, I don't think that this court has to specifically address that issue. I don't think this court has to take on, generally, whether a defense counsel should get into strategic implications with the client and to what extent. Because the specific issue here, and again, going back to Mr. Adejumo's initial motion of the district court is, whether he needed to be advised of the potential obstruction enhancement. And we must keep in mind that this is the defendant who committed perjury. Can I ask a factual question? You've been saying perjury, and I do apologize, I don't have that record in front of me. Did the district court call it perjury, or was it just untruth? Because there was discussion of untruthful testimony, because there is a range. I mean, courts make credibility determinations all the time, every trial, every case, and who to believe more, and it doesn't necessarily rise to perjury. But is there a specific perjury finding during the course of the sentencing? Yes, Your Honor, there is a specific perjury finding. Was it mentioned in this court's opinion? Yes, Your Honor, it is. In the first Adejumo opinion, and I can find that, if you would just give me a moment. I'm looking at it. So if we look at page 536 of this court's opinion, and I believe you. If you say there's a finding of perjury, that was an honest question, I wasn't for sure. Yes, Your Honor, this court did recognize the district court's finding that Mr. Adejumo had committed perjury. Well, I guess I sort of like to circle back to this idea that there's no case out there that says what an attorney has to do, but I'm not sure that that's necessarily the question. It seems to me it's more of the question of what is an attorney's obligation in the first instance to educate their client about a certain decision, and that that sort of is different in every situation, and I'm not sure . . . I'm wondering why we should have to have a district court or an appellate court case out there that says, yes, you have to advise your client about that, when I think if you'd ask a handful of defense attorneys, I guess it's that they'd say, yeah. The allegation by Mr. Adejumo isn't that my counsel failed to engage with me in a conversation about whether or not I should testify, and as a consequence, I testified, it went badly, and I was prejudiced. The allegation is far more narrow than that, and so I realize the concerns that the court has, and in terms of what must put a defense attorney on notice, but it's particularly important in this case in light of the procedural posture and the framework that we are mindful of the specific allegation and the circumstances that defense counsel stood in. I do want to address the second issue that Mr. Adejumo has raised, your honors, which is whether counsel was constitutionally ineffective for failing to challenge the enhancement for loss, and in light of the various questions that you all had regarding the facts, I think it makes sense to start out by going over to clarify some of the facts in this case. Mr. Adejumo personally signed a plea agreement that included a 16-level enhancement for loss, a stipulation for loss, and at the plea hearing, this is the believe sentence, right? Yes. Proceed. Yes, and I'm happy to address that. No, no, no, no, go ahead. At the plea hearing, it's true that the prosecutor did indicate that Adejumo's counsel would be able to argue loss at sentencing, and the district court noted the distinction and the contradiction between that oral statement and the plea agreement, and it took the time to clarify to correct the potential confusion, so to the extent there was confusion during the hearing, it was temporary. The district court specifically walked through all of the enhancements, including the stipulation for loss. As to paragraph 6b, are the parties in agreement regarding that enhancement? Yes. Contrast with paragraph 6c, which was the role enhancement, where the parties disagreed. After that clarification, Mr. Adejumo was placed under oath and questioned by the district court. Twice, he acknowledged under oath that he had no problems reading the plea agreement and the sentencing stipulations. Twice, he indicated under oath that he understood the plea agreement and the sentencing stipulations. Twice, he confirmed his signature to the document. He confirmed that there were no other promises made to him other than those contained within the plea agreement and sentencing stipulations, and he confirmed that he agreed with everything in the document. But didn't he, didn't he lose, I mean, if you go to our, I forget which one, whether it was one or two, but if you go to Judge Kelly's opinion for the court, the language that Judge Benton read, didn't he lose the ability to argue that on appeal because his attorney failed to object to it at the time the loss amount was at issue before the district court? His attorney conceded that they were bound by the stipulation. And isn't that a problem, given that he lost the appellate argument that, you know, that they weren't even able to make it? It was essentially waived, affirmatively waived. As we've argued in our brief, your honor, it was not objectively unreasonable for his lawyer to concede that they were bound by the stipulation because of the law in this circuit, which is that defendant is bound by the promises made in the plea agreement and counsel doesn't act objectively, unreasonably by abiding by the terms of the plea agreement or by failing to challenge stipulated losses at sentencing. Now, notwithstanding all of this, his counsel did in fact object and the district court imposed or enforced the stipulation against counsel. But where we're looking at a Strickland standard, it was not unreasonable for his counsel to concede the stipulation for the reasons that I've discussed a moment ago. Mr. Adejumo personally stipulated to the enhancement under oath. He affirmed the language of the plea agreement, which bound him to that 16 level enhancement. Does that go more to prejudice or objective unreasonableness or both? The reason why I ask is because you could argue that that goes to prejudice as well. If in fact he was bound by the stipulation, he wasn't going to win the appellate argument anyways. He wasn't going to win before the district court and so therefore there's no prejudice. Are you really limiting yourself to the objective unreasonableness on that point? I think your honor makes a very good point. It absolutely goes to both. I think there are other reasons as well that would demonstrate that he was not prejudiced and I'd be happy to address the import of the restitution hearing, but to be clear, all Mr. Adejumo has done is point to the restitution hearing and say, based on this, I was prejudiced. Sounds like it though, doesn't it? Doesn't it just on its face? The facial appeal of this prejudice is just bigger in life. Tell me why it's not. Well, because when we look at the definition of sentencing loss versus restitution, they are different and the difference is very significant. What we're talking about are the actual realized losses by the victims that the government chose to present at the restitution hearing, which was, admittedly, several years after the defendant's initial sentencing. If we're dealing with sentencing loss, the guidelines very clearly define that as actual or intended loss, whichever is greater. Naturally, the loss that's analyzed for restitution is potentially but a fraction of the sentencing losses that the defendant may be held liable for. Fractions of zero or zero? Your Honor, to be clear- You say it's fractions. You know, just use that terms and fractions of zero or zero. That's what bugs me about this case. Go ahead. That's fair, but Your Honor, the reason for vacating the restitution order was that this court felt that the government had not come forward with evidence to confirm that the victims still maintained the losses. It was not that the government hadn't proven that the losses existed at the time that they were incurred. It was that many years later, government, you should have gone again and confirmed with the victims that they maintained these losses and had not in any way recovered against them. Isn't it possible that the district judge, in imposing this, relied on the actual losses that were otherwise found, the losses that we ended up overturning? In other words, the same things went into both calculations. Surely. Well, intended loss in a case like this always subsumes the actual loss. That's true. But even if you're right about that, there could be actual losses that were included in that calculation in addition to the intended losses you're talking about that now have been found to be insufficient. But that would just make them actual, that would just then turn them from being actual losses to intended losses, Your Honor. So they would still count against the defendant for sentencing purposes. Maybe. Okay. And again, to be clear, Mr. Andujumo acknowledged, both in the written plea agreement, that he and others caused or attempted to cause losses of more than a million dollars. Attempted to cause, right, suggests that the loss was not incurred by the victim. It did not follow through, which then puts that loss in the intended loss category. There is clear support in the language of the plea agreement contemplating intended losses, and it was certainly reflected in the PSR as well. I see that my time is up, Your Honors. I would request that the court affirm the decision of the district court to deny Mr. Andujumo's petitions without a hearing. Thank you. Thank you, counsel. Mr. Kushner. First of all, one of the most critical decisions, or one of the most critical roles of a defense lawyer is to discuss with a client whether or not to testify in a court proceeding. That did happen in this case, right? Everybody agrees there was some discussion of the risk of testifying. No, Mr. Andujumo says he was not advised anything about the risk of testifying. Not anything. I thought he wasn't quite that flat in his statement, but go ahead. I'm needing your time. Go ahead. He said he did not know anything about the potential consequences. Okay. Proceed. Proceed. And the federal court is specific, so there is a specific consequence, which is you can be found guilty of obstruction of justice. So, I mean, there's always a risk that someone accused of a crime is going to commit perjury, and that's why you have a lawyer, is that they might find that you've committed perjury. And with all respect, I have problems with Judge Davis deciding without being at the hearing and seeing Mr. Andujumo's testimony and having these conflicting facts for him to be so confident that Mr. Andujumo committed perjury. I think it's unfortunate that, frankly, that a judge would take it upon himself to make such a judgment. But I think you also, if you're a defense attorney practicing in federal court, you have to realize that that happens, and the client might not know that, and they might assume that no one else was there, so they'll have to decide. Do you agree, just to clarify this, you agree with opposing counsel that the district judge did, in fact, make a finding of perjury? He did, yes. In this case? Okay. And then to kind of make just one more point about the restitution. Give you a long sentence. Go ahead. I'm lost. I think what's critical here about the restitution, besides the fact that there was never any distinction made between actual and intended losses, is that the government casually said there's $1.1 million in restitution, and when they had to put up and back it up, they couldn't. And so there's a very strong reason to believe that that'll happen with respect to loss for purposes of sentencing. Thank you both for your argument. Case 16-3050 is submitted for decision.